**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| BEVERLY JEAN PERRY,<br><br>　　　　　　Plaintiff,<br><br>　　v.<br><br>NANCY A. BERRYHILL, Acting Commissioner of Social Security,<br><br>　　　　　　Defendant. | CASE NO. CV 17-8391 SS<br><br><br>**MEMORANDUM DECISION AND ORDER** |

**I.**

**INTRODUCTION**

Beverly Jean Perry ("Plaintiff") seeks review of the final decision of the Acting Commissioner of Social Security (the "Commissioner" or "Agency") denying her application for Disability Insurance Benefits ("DIB"). The parties consented, pursuant to 28 U.S.C. § 636(c), to the jurisdiction of the undersigned United States Magistrate Judge. (Dkt. Nos. 11-13). For the reasons stated below, the decision of the Commissioner is REVERSED and this

case is REMANDED for further administrative proceedings consistent with this decision.

## II.

## THE FIVE-STEP SEQUENTIAL EVALUATION PROCESS

To qualify for disability benefits, a claimant must demonstrate a medically determinable physical or mental impairment that prevents the claimant from engaging in substantial gainful activity and that is expected to result in death or to last for a continuous period of at least twelve months. Reddick v. Chater, 157 F.3d 715, 721 (9th Cir. 1998) (citing 42 U.S.C. § 423(d)(1)(A)). The impairment must render the claimant incapable of performing work previously performed or any other substantial gainful employment that exists in the national economy. Tackett v. Apfel, 180 F.3d 1094, 1098 (9th Cir. 1999) (citing 42 U.S.C. § 423(d)(2)(A)).

To decide if a claimant is entitled to benefits, an ALJ conducts a five-step inquiry. 20 C.F.R. §§ 404.1520, 416.920. The steps are:

(1) Is the claimant presently engaged in substantial gainful activity? If so, the claimant is found not disabled. If not, proceed to step two.

(2) Is the claimant's impairment severe? If not, the claimant is found not disabled. If so, proceed to step three.

(3) Does the claimant's impairment meet or equal one of the specific impairments described in 20 C.F.R. Part 404, Subpart P, Appendix 1? If so, the claimant is found disabled. If not, proceed to step four.

(4) Is the claimant capable of performing his past work? If so, the claimant is found not disabled. If not, proceed to step five.

(5) Is the claimant able to do any other work? If not, the claimant is found disabled. If so, the claimant is found not disabled.

Tackett, 180 F.3d at 1098-99; see also Bustamante v. Massanari, 262 F.3d 949, 953-54 (9th Cir. 2001); 20 C.F.R. §§ 404.1520(b)-(g)(1), 416.920(b)-(g)(1).

The claimant has the burden of proof at steps one through four and the Commissioner has the burden of proof at step five. Bustamante, 262 F.3d at 953-54. Additionally, the ALJ has an affirmative duty to assist the claimant in developing the record at every step of the inquiry. Id. at 954. If, at step four, the claimant meets his or her burden of establishing an inability to perform past work, the Commissioner must show that the claimant can perform some other work that exists in "significant numbers" in the national economy, taking into account the claimant's residual functional capacity ("RFC"), age, education, and work experience. Tackett, 180 F.3d at 1098, 1100; Reddick, 157 F.3d at 721; 20 C.F.R. §§ 404.1520(g)(1), 416.920(g)(1). The Commissioner may do so by the testimony of a vocational expert ("VE") or by

3

reference to the Medical-Vocational Guidelines appearing in 20 C.F.R. part 404, subpart P, appendix 2 (commonly known as "the grids"). Osenbrock v. Apfel, 240 F.3d 1157, 1162 (9th Cir. 2001). When a claimant has both exertional (strength-related) and non-exertional limitations, the Grids are inapplicable and the ALJ must take the testimony of a VE. Moore v. Apfel, 216 F.3d 864, 869 (9th Cir. 2000) (citing Burkhart v. Bowen, 856 F.2d 1335, 1340 (9th Cir. 1988)).

## III.

## THE ALJ'S DECISION

The ALJ employed the five-step sequential evaluation process in evaluating Plaintiff's case. (AR 18-29). At step one, the ALJ found that Plaintiff has not engaged in substantial gainful activity since March 1, 2015, the alleged onset date. (AR 20). At step two, the ALJ found that Plaintiff's carpal tunnel syndrome and degenerative disc disease of the neck and back are severe impairments.[1] (AR 20). At step three, the ALJ determined that Plaintiff does not have an impairment or combination of impairments

---

[1] The ALJ also determined that Plaintiff's medically determinable impairments of depression, anxiety, ulcers, fibromyalgia, and left elbow tendinitis cause only a slight abnormality that would have no more than a minimal effect on her ability to work and are, therefore, nonsevere. (AR 21-24). With respect to Plaintiff's fibromyalgia, the ALJ asserted that "[a]lthough records show [Plaintiff] was diagnosed with fibromyalgia and prescribed medication for this condition, it was further noted that she did not have enough myofascial tender points for fibromyalgia." (AR 21) (citations omitted).

4

that meet or medically equal the severity of any of the listings enumerated in the regulations. (AR 24).

The ALJ then assessed Plaintiff's RFC and concluded that she can perform medium work, as defined in 20 C.F.R. § 404.1567(c),[2] except: Plaintiff can "sit, stand, or walk 6 hours in an 8-hour day; handle and finger frequently with both hands; climb ramps and stairs frequently; climb ladders, ropes, or scaffolds frequently; and stoop, kneel, crouch, and crawl frequently." (AR 24). Based on Plaintiff's RFC and the VE's testimony, the ALJ determined at step four that Plaintiff is capable of performing past relevant work as a housekeeping cleaner and as a home health aide, as actually performed by Plaintiff and as generally performed in the national economy, and as a certified nurse assistant, as generally performed in the national economy but not as actually performed by Plaintiff. (AR 28-29). Accordingly, the ALJ found that Plaintiff was not under a disability as defined by the Social Security Act from March 1, 2015, through the date of the decision. (AR 29).

## IV.

### STANDARD OF REVIEW

Under 42 U.S.C. § 405(g), a district court may review the Commissioner's decision to deny benefits. "[The] court may set

---

[2] "Medium work involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds. If someone can do medium work, we determine that he or she can also do sedentary and light work." 20 C.F.R. § 404.1567(c).

aside the Commissioner's denial of benefits when the ALJ's findings are based on legal error or are not supported by substantial evidence in the record as a whole." Aukland v. Massanari, 257 F.3d 1033, 1035 (9th Cir. 2001) (citing Tackett, 180 F.3d at 1097); see also Smolen v. Chater, 80 F.3d 1273, 1279 (9th Cir. 1996) (citing Fair v. Bowen, 885 F.2d 597, 601 (9th Cir. 1989)).

"Substantial evidence is more than a scintilla, but less than a preponderance." Reddick, 157 F.3d at 720 (citing Jamerson v. Chater, 112 F.3d 1064, 1066 (9th Cir. 1997)). It is "relevant evidence which a reasonable person might accept as adequate to support a conclusion." (Id.). To determine whether substantial evidence supports a finding, the court must " 'consider the record as a whole, weighing both evidence that supports and evidence that detracts from the [Commissioner's] conclusion.' " Aukland, 257 F.3d at 1035 (quoting Penny v. Sullivan, 2 F.3d 953, 956 (9th Cir. 1993)). If the evidence can reasonably support either affirming or reversing that conclusion, the court may not substitute its judgment for that of the Commissioner. Reddick, 157 F.3d at 720-21 (citing Flaten v. Sec'y of Health & Human Servs., 44 F.3d 1453, 1457 (9th Cir. 1995)).

**V.**

**DISCUSSION**

Plaintiff contends that the ALJ erred in failing to find that her fibromyalgia, depression, and anxiety were severe impairments at step two.

By its own terms, the evaluation at step two is a de minimis test intended to weed out the most minor of impairments. See Bowen v. Yuckert, 482 U.S. 137, 153-54 (1987) (O'Connor, J., concurring); Edlund v. Massanari, 253 F.3d 1152, 1158 (9th Cir. 2001) ("We have defined the step-two inquiry as a de minimis screening device to dispose of groundless claims."). An impairment is not severe only if the evidence establishes a slight abnormality that has only a minimal effect on an individual's ability to work. Smolen, 80 F.3d at 1290; see also Webb v. Barnhart, 433 F.3d 683, 686 (9th Cir. 2005). "Ample authority cautions against a determination of nondisability at step-two." Ortiz v. Comm. Of Social Security, 2011 WL 1252308 at *1 (9th Cir. 2011) (case citations omitted).

**A.   The ALJ Failed To Properly Assess Plaintiff's Fibromyalgia As A Severe Impairment At Step Two Of The Evaluation**

Plaintiff contends that the ALJ "erred in determining that [Plaintiff's] fibromyalgia was non-severe, would have no more than a minimal impact on her ability to work, was being managed medically and should be controlled by adherence to medical management and medication." (Dkt. No. 19 at 20). Specifically, Plaintiff argues that the medical records "document ongoing examination findings and diagnoses of fibromyalgia causing significant widespread pain." (Id. at 21). The Court agrees.

Fibromyalgia is "a rheumatic disease that causes inflammation of the fibrous connective tissue components of muscles, tendons, ligaments, and other tissue." Benecke v. Barnhart, 379 F.3d 587,

7

589 (9th Cir. 2004). Typical symptoms include "chronic pain throughout the body, multiple tender points, fatigue, stiffness, and a pattern of sleep disturbance that can exacerbate the cycle of pain and fatigue associated with this disease." Id. at 590. However, those suffering from fibromyalgia have normal muscle strength, sensory functions, and reflexes. Revels v. Berryhill, 874 F.3d 648, 656 (9th Cir. 2017). Because "there are no laboratory tests to confirm the diagnosis," fibromyalgia is assessed "entirely on the basis of patients' reports of pain and other symptoms." Benecke, 379 F.3d at 590; see Revels, 874 F.3d at 657 (a "diagnosis of fibromyalgia does not rely on X-rays or MRIs"). The Agency recognizes that a person suffers from fibromyalgia if:

> (1) she has widespread pain that has lasted at least three months (although the pain may "fluctuate in intensity and may not always be present"); (2) she has experienced repeated manifestations of six or more fibromyalgia symptoms, signs, or co-occurring conditions, "especially manifestations of fatigue, cognitive or memory problems ('fibro fog'), waking unrefreshed, depression, anxiety disorder, or irritable bowel syndrome"; and (3) there is evidence that other disorders are not accounting for the pain.

Revels, 874 F.3d at 657 (quoting SSR 12-2p, at *3). Furthermore, because the symptoms of fibromyalgia "wax and wane," "after a claimant has established a diagnosis of fibromyalgia, an analysis

8

of her RFC should consider 'a longitudinal record whenever possible.'" Id. (quoting SSR 12-2p, at *6).

Here, Plaintiff's fibromyalgia is well established by the record. Plaintiff began treating with Dan La, M.D, a board-certified rheumatologist,[3] in December 2013. (AR 345). Plaintiff complained of chronic pain in her neck and spine that radiates to her upper extremities, along with fatigue, headaches, depression, and anxiety. (AR 345). Medications and multiple physical therapy sessions were ineffective at relieving Plaintiff's pain. (AR 345). An MRI of the cervical spine revealed mild spondylosis, which Dr. La excluded as a cause for her chronic pain. (AR 345) ("Her pain is out of proportion to the imaging findings."). Blood tests also excluded rheumatoid arthritis and lupus as causing Plaintiff's chronic pain. (AR 345). Dr. La diagnosed cervical spondylosis with degenerative disc disease, bilateral carpal tunnel syndrome, right knee degenerative arthritis, along with general pain of unknown etiology, noting that Plaintiff "does not have enough myofascial tender points for fibromyalgia." (AR 346). However, by June 2014, Plaintiff's symptoms included diffuse myofascial tender points, primarily localized to the shoulder blades and arms, and thoracic spine trigger points with muscle spasm. (AR 352). Accordingly, Dr. La diagnosed "suspected fibromyalgia." (AR 352). In August 2014, Plaintiff complained of worsening diffuse myofascial pain in her neck, arms, back, and legs, along with

---

[3] See Medical Board of California, Online License Search, available at <www.mbc.ca.gov/Breeze/License_Verification.aspx> (last visited Aug. 23, 2018).

9

numbness and tingling, insomnia, depression, anxiety, fatigue, and headaches. (AR 353-54). Dr. La diagnosed fibromyalgia with diffuse myofascial tender points, primarily localized to the shoulder blades and arms, and thoracic spine trigger points with muscle spasm. (AR 354). During examinations in September and November 2014 and in January, April, and August 2015, Dr. La reasserted his "severe fibromyalgia" diagnosis. (AR 469, 471, 475, 478, 482). Furthermore, Plaintiff often complained of somatic symptoms that are associated with fibromyalgia, see SSR 12-2p, at *3 & nn.9-10, including depression (AR 345, 348, 351, 353, 468, 471, 474, 477, 481), anxiety (id. 345, 348, 351, 353, 468, 471, 474, 477, 481), fatigue (id. 345, 348, 351, 353, 468, 471, 474, 477, 481), headaches (id. 345, 348, 351, 468, 471, 474, 477, 481), muscle spasms (id. 352, 469, 472, 475, 478, 482), insomnia (id. 353, 468, 471, 474, 477, 481), and tingling and numbness (id. 354, 469, 472, 475, 477), together with widespread pain (id. 345, 348, 351, 353-54, 468-69, 471-72, 474-75, 477-78, 481-82). Even if the ALJ could have found that this evidence is insufficient to determine whether Plaintiff's fibromyalgia is a severe impairment, which is not a conclusion this Court reaches, the Agency should have sought additional information from Plaintiff or her physicians or ordered a consultative examination. See SSR 12-2p, at *4-5; see also Bustamante, 262 F.3d at 954 (ALJ has an affirmative duty to assist the claimant in developing the record).

Defendant contends that "there was no evidence of Dr. La performing digital palpation with an approximate force of nine pounds when testing the tender-point sites as required under SSR

12-2p." (Dkt. No. 20 at 4). However, Dr. La followed the 2010 American College of Rheumatology (ACR) Criteria for the Classification of Fibromyalgia, which unlike the 1990 ACR Criteria, no longer requires the physician to perform digital palpation. Compare SSR 12-2p, at § II.A., with id. at § II.B; accord Revels, 874 F.3d at 657. Defendant also argues that "there is no evidence in the record . . . that other disorders which could cause the symptoms were excluded." (Dkt. No. 20 at 4) (citation omitted). To the contrary, as discussed above, Dr. La explicitly excluded rheumatoid arthritis and lupus as possible causes for Plaintiff's chronic, widespread pain. (AR 345). Dr. La also noted that Plaintiff's widespread pain could not be accounted for by her cervical spondylosis with degenerative disc disease, minimal. (AR 346); see SSR 12-2p, at *3 n.7 (noting the types of disorders that should be excluded before diagnosing fibromyalgia include rheumatologic disorders and hyperextension-associated disorders).

Defendant asserts that Dr. La's diagnosis was "not consistent with the record evidence as a whole," noting unremarkable MRI scans and physical examinations, including normal reflexes, gait, and range of motion. (Dkt. No. 20 at 4-5). Defendant, however, misapprehends the nature of fibromyalgia symptoms. As the Ninth Circuit recently emphasized, those suffering from fibromyalgia have normal muscle strength, sensory functions, and reflexes. Revels, 874 F.3d at 656. Instead, because "there are no laboratory tests to confirm the diagnosis," fibromyalgia is assessed "entirely on the basis of patients' reports of pain and other symptoms." Benecke, 379 F.3d at 590.

Dr. La's assessment is consistent with and supported by other treating sources. In December 2015, Paresh N. Varu, M.D., diagnosed fibromyalgia, osteoarthritis, carpal tunnel syndrome, depression, and anxiety. (AR 429). In February 2016, Dr. Varu's examination findings included muscle spasms and moderate pain with motion in the cervical spine. (AR 427). Dr. Varu diagnosed osteoarthritis with radiculopathy in the cervical spine and fibromyalgia. (AR 427). In May 2016, Plaintiff reported confusion, nausea, weakness, poor coordination, depression, paresthesia, and fatigue. (AR 436). On examination, Plaintiff had reduced pin prick sensation, reduced temperature sensation, and reduced vibration sensation in her lower extremities. (AR 436). Raj H. Karnani, M.D., diagnosed cervical radiculopathy, lumbar radiculopathy, low back pain, fibromyalgia, and carpal tunnel syndrome. (AR 436).[4]

The Commissioner contends that the ALJ properly relied on the State agency physician's assessment, who did not identify fibromyalgia as a severe impairment. (Dkt. No. 20 at 13-14); (see AR 26-27, 98-100). However, the State agency consultant made his evaluation in November 2014, prior to significant portions of the

---

[4] Plaintiff argues that the ALJ erred by rejecting the treatment records and opinions of Drs. La, Varu, and Karnani. (Dkt. No. 19 at 6-14). However, because none of these treating physicians provided a medical opinion, the ALJ was not required to explain what probative value she gave to the physicians' treatment notes. Cf. 20 C.F.R. § 404.1527(a)(1) ("Medical opinions are statements from acceptable medical sources that reflect judgments about the nature and severity of your impairment(s), including your symptoms, diagnosis and prognosis, what you can still do despite impairment(s), and your physical or mental restrictions.").

medical evidence from Plaintiff's treating physicians, as discussed above, being added to the medical record. Therefore, the ALJ's decision to give "great weight" to the State agency consultant's opinion was error because his opinion was based on an incomplete record. See Celaya v. Halter, 332 F.3d 1177, 1183 (9th Cir. 2003) ("The ALJ always has a special duty to fully and fairly develop the record and to assure that the claimant's interests are considered even when the claimant is represented by counsel.") (citation and ellipses omitted).

Furthermore, Plaintiff's fibromyalgia significantly affected her ability to work. Dr. La consistently noted that multiple treatment modalities, including pain medications, physical therapy, and epidural injections had failed to alleviate Plaintiff chronic, widespread pain. (AR 340-64, 468-98). In August 2014, Dr. La reported that Plaintiff was experiencing "severe fibromyalgia with worsening myofascial pains." (AR 353). In August 2015, Dr. La observed worsening myofascial pains in the neck, arms, back, legs, shoulders, elbows, hands, hips, knees, upper arms, biceps, forearms, thighs, and calves. (AR 468-69). Dr. La found decreased flexion, extension, and lateral flexion in Plaintiff's cervical spine. (AR 469). Plaintiff also experienced numbness and tingling involving the neck, low back, hands, and toes of her left foot. (AR 469). As the Ninth Circuit recently observed in Revels: "In evaluating whether a claimant's residual functional capacity renders them disabled because of fibromyalgia, the medical evidence must be construed in light of fibromyalgia's unique

symptoms and diagnostic methods . . . . The failure to do so is error, as is true here." 874 F.3d at 662.

Because a step-two evaluation is to dispose of "groundless claims," and the evidence here was far beyond "groundless" to show that Plaintiff suffers from fibromyalgia, the ALJ erred at step-two. See Webb, 433 F.3d at 687. The evidence in the record was sufficient for the ALJ to conclude that Plaintiff's fibromyalgia is a severe impairment at step two under the de minimis test. For the foregoing reasons, the matter is remanded for further proceedings. On remand, the ALJ must evaluate Plaintiff's fibromyalgia as a severe impairment at step-two and include limitations imposed by Plaintiff's fibromyalgia in the ALJ's overall evaluation of Plaintiff.

**B.    The ALJ Failed To Properly Assess Plaintiff's Depression And Anxiety As Severe Impairments At Step Two Of The Evaluation**

Plaintiff contends that the medical record supports "finding that [her] depression and anxiety were severe impairments and . . . included symptoms and limitations that would affect [her] ability to perform basic work activities. (Dkt. No. 19 at 22). The Court agrees.

Plaintiff's depression and anxiety are supported by evidence in the medical record. John Zhang, Psy.D, performed a psychological examination on behalf of the Agency in June 2016. (AR 386-92). On examination, Dr. Zhang found a mildly anxious and

14

depressed mood, with a constricted affect and poor insight. (AR 388). Plaintiff had a borderline range of intelligence with a Full Scale IQ score of 78 and a mildly impaired memory. (AR 390-91). Dr. Zhang concluded that Plaintiff has mild intellectual deficits and diagnosed depressive disorder, with anxiety. (AR 391). Dr. Zhang opined that Plaintiff is moderately impaired in her ability to understand, remember, and carry out detailed and complex instructions; maintain concentration, persistence, and pace in common work settings; maintain consistent attendance and to perform routine work duties; perform work activity without special or additional supervision; and respond appropriately to usual work situations and to changes in a routine work setting. (AR 391). Further, Plaintiff consistently presented to Dr. La with symptoms of depression and anxiety, as described above. (AR 345, 348, 351, 353, 468, 471, 474, 477, 481). In December 2013, Dr. La noted that Plaintiff's psychiatrist started Plaintiff on Cymbalta to see if would be more effective at addressing her depression symptoms than Wellbutrin. (AR 346). The Cymbalta dosage was later doubled to see if would be more effective. (AR 349, 352, 354). In June 2014, D.V. Pillai, M.D., Plaintiff's treating psychiatrist, diagnosed major depression, recurrent, noting that Plaintiff is discouraged, easily exhausted, cries often, and is somatically focused. (AR 324-25). Dr. Pillai opined that Plaintiff's ability to work would be affected by her inability to focus and be consistent. (AR 327). Therese Harris, Ph.D., the State agency psychologist reviewed the medical record and found that Plaintiff's affective disorders were severe. (AR 85). Dr. Harris opined that Plaintiff is moderately limited in her ability to carry out detailed instructions, maintain

15

attention and concentration for extended periods, and complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods. (AR 88). Dr. Harris concluded that Plaintiff is able to maintain focus, pace, and persistence for simple tasks for two-hour periods over an eight-hour workday within a normal forty-hour work schedule. (AR 88).

Defendant argues that the ALJ properly determined that Plaintiff's medically determinable mental impairments of depression and anxiety are nonsevere because they cause no limitations in activities of daily living, social functioning, or maintaining concentration, persistence, or pace. (Dkt. No. 20 at 6-8); (see AR 22-24). However, the Commissioner has cautioned that "[g]reat care should be exercised in applying the not severe impairment concept." SSR 85-28, at *4. Even if the ALJ properly rejected all of Plaintiff's subjective symptoms, which is not a conclusion this Court reaches, the tests performed by Dr. Zhang evince that Plaintiff's depression and anxiety would have more than a de minimis effect on her ability to perform basic work activities. (AR 390-91). For example, Dr. Zhang opined that Plaintiff's borderline range of intelligence, poor insight, and impaired memory would moderately limit her ability to maintain concentration, persistence, and pace in common work settings, a conclusion which the State agency psychologist adopted. (AR 88, 388-91); see SSR 85-28, at *4 (if the ALJ is "unable to determine clearly the effect of an impairment or combination of impairments on the individual's

16

ability to do basic work activities, the sequential evaluation process should not end with the not severe evaluation step") (emphasis added). In this circumstance, the sequential evaluation process should continue through steps three, four, and five to "evaluate the individual's ability to do past work, or to do other work based on the consideration of age, education, and prior work experience." SSR 85-28, at *4.

Because a step-two evaluation is to dispose of "groundless claims," and the evidence here established that Plaintiff suffers from depression and anxiety, the ALJ erred by not addressing these ailments. See Webb, 433 F.3d at 687. The evidence in the record was sufficient for the ALJ to conclude that Plaintiff's depression and anxiety are severe impairments at step two under the de minimis test. For the foregoing reasons, the matter is remanded for further proceedings.[5] On remand, the ALJ must evaluate Plaintiff's depression and anxiety as severe impairments at step-two and include limitations imposed by Plaintiff's depression and anxiety in the ALJ's overall evaluation of Plaintiff.

---

[5] Plaintiff also argues that ALJ improperly weighed the opinions of Drs. Garcia, Zhang, Pillai, and Harris, and erred in determining her RFC. (Dkt. No. 19 at 6-18, 24-27). However, it is unnecessary to reach Plaintiff's arguments on these grounds, as the matter is remanded for the alternative reasons discussed at length in this Order.

17

**VI.**

**CONCLUSION**

Accordingly, IT IS ORDERED that Judgment be entered REVERSING the decision of the Commissioner and REMANDING this matter for further proceedings consistent with this decision. IT IS FURTHER ORDERED that the Clerk of the Court serve copies of this Order and the Judgment on counsel for both parties.

DATED: August 24, 2018

/S/
SUZANNE H. SEGAL
UNITED STATES MAGISTRATE JUDGE

**THIS DECISION IS NOT INTENDED FOR PUBLICATION IN LEXIS/NEXIS, WESTLAW OR ANY OTHER LEGAL DATABASE.**